1  PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

2  Name  San Agustin    Michael
       (Last)          (First)          (Initial)

3
4  Prisoner Number ____ T-45378 _____

   Institutional Address ____ P.O. Box 7000, Crescent City, Ca. 95531 ____

5
6  ========================================================================

7                    UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA

8  Michael San Agustin
   _____

   (Enter the full name of plaintiff in this action.)          )
9                                                              )
                                                               )
                            vs.                                )     Case No. _____
                                                               )     (To be provided by the clerk of court)
   James Tilton, Director CDCR                                 )
                                                               )     **PETITION FOR A WRIT**
11 _____                                 )     **OF HABEAS CORPUS**
                                                               )
12 _____                                 )     **(Prison Issue, Denial Of**
                                                               )     **Credits Extending Term)**
13 _____                                 )
                                                               )
14 (Enter the full name of respondent(s) or jailor in this action.)  )
                                                               )
15 _____                                 )

16 ========================================================================

                    Read Comments Carefully Before Filling In

17 When and Where to File

18      You should file in the Northern District if you were convicted and sentenced in one of these

19 counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21 this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23      If you are challenging your conviction or sentence and you were not convicted and sentenced in

24 one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 District Court for the district in which the state court that convicted and sentenced you is located. If

26 you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 your petition will likely be transferred to the district court for the district that includes the institution

28 where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

1 | Who to Name as Respondent

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10 | A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1. What sentence are you challenging in this petition?   **Prison Issue**

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13                 County Superior Court, Oakland):

14          **Superior Court**                    <u>Orange County</u>

15               Court                              Location

16          (b)    Case number, if known ___**00NF1306**___

17          (c)    Date and terms of sentence ___**Jan 25, 2002**___

18          (d)    Are you now in custody serving this term? (Custody means being in jail, on

19                 parole or probation, etc.)          Yes __**XXX**__    No ____

20                 Where?

21                 Name of Institution: **Pelican Bay State Prsion**

22                 Address: _____**P.O. Box 7000, cCrescent City, Ca.**

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26          **THIS Writ concerns prison issues involving good time**

27          **Credits rendering petitioner's sentence illegal.**

28

PET. FOR WRIT OF HAB. CORPUS        - 2 -

1    3. Did you have any of the following?

2          Arraignment:                              Yes _____    No _____

3          Preliminary Hearing:                      Yes _____    No _____

4          Motion to Suppress:                       Yes _____    No _____

5    4. How did you plead?

6          Guilty _____    Not Guilty _____    Nolo Contendere _____

7          Any other plea (specify) _____

8    5. If you went to trial, what kind of trial did you have?

9          Jury _____    Judge alone _____    Judge alone on a transcript _____

10   6. Did you testify at your trial?                Yes _____    No _____

11   7. Did you have an attorney at the following proceedings:

12         (a)    Arraignment                         Yes _____    No _____

13         (b)    Preliminary hearing                 Yes _____    No _____

14         (c)    Time of plea                        Yes _____    No _____

15         (d)    Trial                               Yes _____    No _____

16         (e)    Sentencing                          Yes _____    No _____

17         (f)    Appeal                              Yes _____    No _____

18         (g)    Other post-conviction proceeding    Yes _____    No _____

19   8. Did you appeal your conviction?               Yes _____    No _____

20         (a)    If you did, to what court(s) did you appeal?

21                Court of Appeal                     Yes _____    No _____

22                Year: _____    Result: _____

23                Supreme Court of California         Yes _____    No _____

24                Year: _____    Result: _____

25                Any other court                     Yes _____    No _____

26                Year: _____    Result: _____

27

28         (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS          - 3 -

1              petition?             Yes \_\_\_\_    No\_\_\_\_

2       (c)    Was there an opinion?        Yes \_\_\_\_    No\_\_\_\_

3       (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                              Yes \_\_\_\_    No\_\_\_\_

5              If you did, give the name of the court and the result:

6              _____ _____

7              _____

8 9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9 this conviction in any court, state or federal?        Yes \_\_\_\_    No\_\_\_\_

10         [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11 challenged the same conviction you are challenging now and if that petition was denied or dismissed

12 with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13 for an order authorizing the district court to consider this petition. You may not file a second or

14 subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15 U.S.C. §§ 2244(b).]

16       (a)    If you sought relief in any proceeding other than an appeal, answer the following

17              questions for each proceeding. Attach extra paper if you need more space.

18          I.    Name of Court: _____

19               Type of Proceeding: _____

20               Grounds raised (Be brief but specific):

21                  a._____

22                  b._____

23                  c._____

24                  d._____

25               Result: _____Date of Result:_____

26          II.    Name of Court: _____

27               Type of Proceeding: _____

28               Grounds raised (Be brief but specific):

1                    a._____

2                    b._____

3                    c._____

4                    d._____

5                    Result: _____ Date of Result:_____

6       III.    Name of Court: _____

7                Type of Proceeding: _____

8                Grounds raised (Be brief but specific):

9                    a._____

10                   b._____

11                   c._____

12                   d._____

13                   Result: _____ Date of Result:_____

14      IV.    Name of Court: _____

15               Type of Proceeding: _____

16               Grounds raised (Be brief but specific):

17                   a._____

18                   b._____

19                   c._____

20                   d._____

21                   Result _____ Date of Result:_____

22    (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                                  Yes _____    No_____

24          Name and location of court: _____

25 **B. GROUNDS FOR RELIEF**

26     State briefly every reason that you believe you are being confined unlawfully. Give facts to

27 support each claim. For example, what legal right or privilege were you denied? What happened?

28 Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS    - 5 -

1  need more space. Answer the same questions for each claim.

2  [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One:____ Denial Of Due Process resulting in extended

6  Prison Term, Denial of Good Time Credits affecting length

7  of term.
   Supporting Facts:____ See: Attached Statement of facts.

8  _____

9  _____

10  _____

11  Claim Two:_____

12  _____

13  Supporting Facts:_____

14  _____

15  _____

16  _____

17  Claim Three:_____

18  _____

19  Supporting Facts:_____

20  _____

21  _____

22  _____

23  If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:
      These claims have been submitted to Del Norte County
25  _____

26  Superior Court (Denial Attached: the Court Of Appeals,

27  and The California  Supreme Court

28  _____

PET. FOR WRIT OF HAB. CORPUS      - 6 -

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3    of these cases:

4    **Memorandum Of Points And Authorities attached**

5    _____

6    _____

7    Do you have an attorney for this petition?                                    Yes____    No **X**

8    If you do, give the name and address of your attorney:

9    _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on ___6 .-30-08___                          _____

14             Date                                        Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS              - 7 -

6.  GROUNDS FOR RELIEF

LT. QUINONES PREDETERMINATION THAT PETITIONER WOULD BE VALIDATED [before the evidence is discovered, collected, and submitted], AND THAT HE [Quinones] "WILL FIND" AN OFFICER TO TALK BAD ABOUT SAN AGUSTIN DEMONSTRATES A SPECIFIC AND REAL FORM OF BIAS VIOLATIVE OF SAN AGUSTINE'S RIGHT TO DUE PROCESS UNDER BOTH THE STATE AND FEDERAL CONSTITUTION WHICH ENTITLED HIM TO A FAIR, AND IMPARTIAL, FACT FINDER **And Denial of Behavior Credits resulting in extended term of Confinement:**

Petitioner Michael San Agustin arrived at CSP-SATF on August 16, 2002. Petitioner has no CDC 115 Rules Violation Reports for misconduct of any kind, he focused his time on his wife, family, playing basketball, and keeping a clean record while in prison.

On February 7, 2005, regular building officer (C/O Shaw) appeared at his cell door and asked both San Agustin and his cell mate to "cuff-up". Both inmates complied with this direct order and asked what was going on?   C/O Shaw stated that he had received instructions to transport both inmates to the Program Office.

Once in the Program Office they confiscated both inmates clothes, then handed petitioner a pair of boxers, giving his cellie back his clothes.

When petitioner inquired as to what was going on he was told by an unidentified officer that he petitioner was going to the hole (Administrative Segregation Unit) (hereafter "ASU") and that

(3) lines of text saying that an informant is stating [hearsay] that a letter ["PHANTOM LETTER"] was written by petitioner [This letter does not exist, nor was it given to petitioner as in the case of the first letter above]. Sgt. Quinones then stated "What do you have to say about these 1040's?" (Confidential Disclosure Forms). Petitioner stated "These are all lies, that is not my writing, I do not speak, read, or write in the spanish language, I have no authority over anything, I do not speak to other inmates about letters, and I do not know the inmates mentioned in the 1040's" (Guzman-Martines). Quinones stated "Yeah right!" Petitioner turned to his building officer (C/O Shaw) and said "Can you believe this" officer Shaw told petitioner to turn around and not talk to him now.

At that point petitioner stated to Sgt. Quinones "You automatically assume I am lying so there is no further need to keep explaining myself." Quinones then said "You'll talk sooner or later, go sit in your cell in the hole (ASU) and think about it."

At this point Quinones after being quiet for a moment stated "you know what's weird about this case, I can't find one Correctional Officer to say one bad thing about you — BUT I WILL" [?] at this point the interview concluded.

As petitioner was being escorted out of the room and back to a holding cage C/O Shaw (Regular Building Officer) stated "this didn't come from us" (i.e., Building 6 Officers) and stated "that's why I am still here to know myself why, and what they wanted with you" C/O Shaw further informed petitioner that "most of the time these validations start from us, or after receiving a

call or notification from IGI personnel based on what we see,
hear, or find, but we had nothing to do with this one, and that
out of the whole building (inmate wise) you are the last person
we would have thought this would happen to. You are not on our
Hot List for this, or any other reason" Petitioner asked C/O
Shaw "where is this coming from then?" Shaw replied "it had to
come from higher-ups because we knew absolutely nothing about it
till they called today and asked us to bring you to the program
office. Normally I don't stay but I wanted to see what they
wanted with you."

Petitioner was transported to and placed in the
Administrative segregation Unit (ASU) at CSP-SATF.

Petitioner once in ASU read over the documentation handed to
him by Lt. Quinones as follows:

. 1) Document #1 (Exhibit "A") is the (4-15-04) letter Lt.
Quinones originally states petitioner wrote in spanish. Attached
to this letter is a 128-B chrono which presumptively states that
"a Validation package will be submitted" against petitioner prior
to the requisite evidence or facts being collected (Exhibit "A").

2) Document #2 (Exhibit "B") is a Confidential Disclosure
Form CDC 1030 which states: "Confidential Memorandum Dated
2-13-04 (INTEL REPORT) indicates you are the over-all authority
for the mesa on the upper yard at CSATF, conducting mexican mafia
gang related business for Artie Guzman C-41587, a validated
member of the mexican mafia."

It should be noted that on this CDC 1030 under Section 2,
that the "Reliability of Source" is setforth as: Subsection f)
Other: (Explain) "Investigation".

10-

3) Document #3 (Exhibit "C") is a Confidential Disclosure Form CDC 1030 which states: "Confidential Memorandum Dated May 25-04, (INFORMANT) indicates you are the second highest-ranking Member of the mexican mafia chain of command on facility C at CSATF."

It should be noted that on this CDC 1030 under Section 2, that the "Reliability of Source" is setforth as Subsection f) Other: (Explain) "Investigation".

4) Document #4 (Exhibit "D") Is a Confidential Disclosure Form CDC 1030 which states: "Confidential Memorandum Dated September 22-04, (INFORMANT) indicates a letter was generated by you which stated that "Badger" known to this investigator as Albert Martinez P-78620 a validated associate of the mexican mafia, was at CSATF-Corcoran with you."

It should be noted this "PHANTOM LETTER" does not physically exist in real form, and certainly has not been provided to petitioner.

It should be further noted, that on this CDC 1030 under Section 2, that the "Reliability of Source" is setforth as Subsection f) Other: (Explain) "Investigation".

On June 13, 2005, San Agustin was provided with a copy of the 128-B-2 Validation Chrono from LEIU in Sacramento.

On June 29, 2005, San Agustin appeared before the Institutional Classification Committee (ICC) where the validation was noted and San Agustin was given an indeterminate SHU Program to be served in the Security Housing Unit at Pelican Bay State Prison.

11.

On August 13, 2005, petitioner filed his **Administrative Appeal** appealing the IGI-LEIU Gang Validation as inherently unreliable **(Exhibit "E")**. The appeal addressed each validation source item (Letter and each Confidential Disclosure Form) as 1) second-hand information, 2) double hearsay of an unreliable nature, and 3) bias on the part of Lt. Quinones for his predetermination of guilt and related statements.

On September 2, 2005, Lt. Quinones (ironically) **assigned himself** to answer Petitioner's Administrative Appeal at the First Level (<u>Fact Finder</u>, <u>Judge</u>, <u>Jury</u>, and <u>Appellate Reviewer</u>) **(Exhibit "F")**. Lt. Quinones did not addressed any of the contentions in the appeal, **except to acknowledge that he 'knew' petitioner did not write the letter** (Rendering it second-hand information) **(Exhibit "A"; See also: Affidavit of Michael San Agustin, Attached hereto)**. Instead, Quinones focused his **appeal response** on Petitioner's "Alleged" failure to come out of his cell to speak with Quinones on various dates prior to validation believing this failure had some relevance, or special baring, on the issues raised <u>within</u> the appeal, **(Exhibit "E" and "F")** thus denying San Agustin any "meaningful review" by an **independant**, and **impartial reviewer** at the First Level of the Appeals Process.

On October 20, 2005, petitioner was transfered to Pelican Bay State Prison.

On October 24, 2005, Petitioner's Appeal was heard at the Second Level **(Exhibit "G")**. In the **"Summary Section"** it refers back to Lt. Quinones's Investigation of the First Level Appeal [?] stating that "Validation Source Documents" were discussed with you." Besides the one admission by Quinones as to his

12.

knowledge that petitioner did not write the letter **(Exhibit "A")**, Quinones did not discuss any source items or documents mentioned in the appeal, nor did he bring this up in his appeal response for the Second Level to be able to say that he did.

The Third and Final Level of Appeal was denied on June 29, 2006. Petitioner received his Third Level Appeal back on August 4, 2006, from which this writ of habeas corpus is taken. **(Exh. "H")**

### GROUND I.

**LT. QUINONES PREDETERMINATION THAT PETITIONER WOULD BE VALIDATED [before the evidence is discovered, collected, and submitted], AND THAT HE [Quinones] "WILL FIND" AN OFFICER TO TALK BAD ABOUT SAN AGUSTIN DEMONSTRATES A SPECIFIC AND REAL FORM OF BIAS VIOLATIVE OF SAN AGUSTINE'S RIGHT TO DUE PROCESS UNDER BOTH THE STATE AND FEDERAL CONSTITUTION WHICH ENTITLED HIM TO A FAIR, AND IMPARTIAL, FACT FINDER**

Lt. Quinoes predetermination [of guilt] that a validation package **"WILL BE SUBMITTED to LEIU"** before the requisite (3 source items, Title 15, CCR § 3378 (c)(2)) facts and mandatory evidence was discovered, collected, and submitted is, constitutionally impermissable.

In California Prison Gang Validations (California Code of Regulations § 3378 et. seq.) inmates are not afforded traditional disciplinary proceedings where they have "investigative employees", "produce witnesses", and "present evidence".

They do however, "have the right to have the facts determined by an independant and non-partial decision maker who has no personal interest or involvement in the out come of the proceeding" People v. Superior Court (Hamilton), 281 Cal.Rptr. 900 (Cal.app, 5th Dist. 1991). See also: Patterson v. Coughlin, 905 F2d. 564 (2 Cir. 1990) "Impartial decisionmaker"...is one who does not prejudge evidence, and who cannot say how he would

assess evidence he has not seen." "One foundational process is the guarantee of a fair and impartial fact-finder. Citing Edwards v. Balisok, 520 U.S. 641 648 (1997), the court held that "A decision made by a fact-finder who has predetermined the outcome is per se invalid -- even where there is ample evidence to support it."

Here, Lt. Quinones after reading the first source item (Exhibit "A") (a letter he later admits San Agustin did not write) author's the attending 128-B Chrono stating "a validation package will be submitted to LEIU. Lt. Quinnes personally placed this 128-B Chrono in San Agustin's institutional "Central File" and if for no other reason, has an invested personal interest in seeing that his recorded claim [a validation packet will be submitted] will become accurate in the future.

Lt. Oquinones made a number of troubling remarks, when concluding his initial interview with San Agustin, he states: "You know what's weird about this case, I can't find one correctional officer to say one bad thing about you...BUT I WILL" Petitioner would assert that Quinones lacked impartiality, is biased, and would go to any length ["BUT I WILL"] to see that his initial claim [WILL BE SUBMITTED] will come true. Quinones could conceivably ask subordinate staff, and even inmate informants, until he found someone willing to talk bad about, or fabricate information, about San Agustin...[BUT I WILL]

Lt. Quinones appointing himself as fact finder (Reviewer) at the first level of appeal is a continued effort on his part to limit review as to the accuracy and veracity of the facts in this case.                                                14.

Petitioner asserts that he may not have a right to a traditional disciplinary hearing, however, petitioner does have the right to an impartial fact finder.

San Agustin is confined in Pelican Bay Security Housing Unit and has a clear **"Liberty Interest"** in being free from indefinite SHU confinement **Sandin v. Connor**, 515 U.S. 472, 477-487 (1995); See Also: Toussaint v. McCarthy, 801 F 2d. 1097-1098; **Madrid v. Gomez**, 889 F. Supp. 1146, 1271 (N.D. Ca. 1995); **Casteneda v. Marshall**, 1997 Dist Lexis 4612 at *8 (N.D. 1997).

San Agustin's liberty interest is of real substance because his SHU Sentence places an "Atÿpical or Significant Hardship on petitioner in relation to the ordinary incidents of prison life. He is clearly constitutionally entitled to a fair and impartial fact finder.

15.

7. Ground 2 or Ground _____ (if applicable):

WHERE A CONFIDENTIAL INFORMANT IS USED TO VALIDATE PETITIONER AS
A GANG ASSOCIATE/MEMBER THE INFORMANT MUST MEET THE "RELIABILITY
TEST" SET FORTH IN CCR § 3321 (c) HERE RESPONDENT FAILS TO GIVE
PETITIONER "PROPER NOTICE" ON THE FACE OF THE CDC 1030
CONFIDENTIAL DISCLOSURE FORMS AS TO ACTUAL REASONS ADVANCED FOR
THE RELIABILITY DETERMINATION (Exhibits "B", "C" and "D"):

a. Supporting facts:

California Department of Corrections Rules contain a test
for the reliability of confidential information. The CDC
reliability standards, found in Section 3321 (c) require that the
confidential source item meet one of the following criteria:

1. The confidential source has previously provided
information which proved to be true.

2. Other confidential sources have independently
provided the same information.

3. The information provided by the confidential source
is self incriminating.

4. Part of the information provided is corroborated
through investigation or by information provided by
non-confidential sources.

5. The confidential source is the victim.

In a simple review of Confidential Disclosure Forms (CDC
1030's) given to petitioner Exhibits "B", "C", and "D" all state
that the information provided by the respective informants are

reliable because of **Investigation,** the CDC 1030 Forms under Section 2) **"Reliability of Source"** setforth 6 criteria by which respondent advances the information to be reliable, and provide petitioner with constitutionally adequate "notice" of the reliability of the informant

a) [] The source has previously provided confidential information which has proven to be true

b) [] This source participated in and successfully completed a Polygraph Examination.

c) [] More than one source independently provided the same information.

d) [] This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) [] Part of the information provided by the source(s) has already proven to be true.

f) [] Other (EXPLAIN):

Lt. Quinones marked Subsection f) Other (EXPLAIN) and typed in the term **"INVESTIGATION"** to 'explain' the reliability of the informant. While this may serve Lt. Quinones's purposes it does not give petitioner, or this court adequate notice as to the factors' and criteria used to deem each of these informants and the information they provided as reliable, and is violative of due process under the 14th Amendment to the United States Constitution **Wolff v. McDonnell,** 418 U.S 539, 563-64. Petitioner has no means to challenge the term "Investigation" nor can the court determine the reliability of the informants using the term "Investigation" .

Petitioner asserts that he has not been given proper notice of the reliability of the confidential informants under CCR §3321 (c); or the CDC Form 1030(s).

In California due process requires prison officials to independently establish the reliability of the confidential informants Zimmerly v. Keeney, 831 F.2d. 183 at 186 (9th Cir. 1987). "A bald assertion by an unidentified person [inmate] without more, cannot constitute some evidence of guilt" Cato v. Rushen, 824 F.2d. 703 at 705 (9th Cir 1987).

Petitioner based on this lack of proper notice asserts that the validation should be rescinded.

7. **Ground 2 or Ground** _____ *(if applicable):*

THE EVIDENCE RELIED ON TO VALIDATE PETITIONER DOES NOT EVEN MEET THE LOW THRESHOLD OF "SOME EVIDENCE" AS IT IS UNRELIABLE, BASED ON SECOND AND THIRD HAND INFORMATION AND HEARSAY

a. Supporting facts:

SOURCE ITEM No. 1 The 4-15-04 LETTER (Exhibit "A")

This source item (letter) is clearly unreliable because it is clearly neither written, or mailed by San Agustin. IGI Lt. Quinones is consciously aware of this fact due to his daily monitoring of San Agustin's mail and comparing this specific source item with his writing. San Agustine neither reads, writes or speaks Spanish. Furthermore, subsequent IGI investigation revealed no communication from inmate Renteria at any time.

It should be noted here that there is no articulable basis in Lt. Quinones April 15, 2004 chrono that establishes any illegal or unlawful act on behalf of a gang (See Exhibit "A") (See: Also Title 15, CCR §§ 3000 "Gang" and 3023 Gang Activity") San Agustin based on information and belief has reason to believe that Lt. Quinones interpretation and recitation of this letter requires independent review as San Agustin has been informed that the letter neither or articulates what Lt. Quinones sets forth in

his 4-15-04 Informational Chrono **(Exhibit "A")**.    Lt. Quinones

supposition, conjecture and speculation in this regard is

particularly noteworthy as well.

   This source item (letter) is not written by San Agustin

which Lt. Quinones consciously knows, and now admits **(See:**

**Affidavit of Michael San Agustin attached)**.  At best the letter

which is the 'catalyst' of the entire investigation against San

Agustin could only be considered hearsay and second hand

information of a suspicious nature. **See:** **Cato vs. Rushen** 824 F

**2d. 703 (1991 9th Cir.)**.  Lt. Quinones speculation and conjecture

that San Agustin is **"The Mailman"** is equally absurd...someone

else using San Agustin's name is more-likely-than-not which begs

the question "why would San Agustin use his own name to begin

with?"

   **SOURCE ITEM No. 2 CDC Form 1030 Dated 5-25-05 (Exhibit"B")**

   As an initial matter this CDC Form 1030 is invalid on its

face because it does not list or clearly establish the specific

criteria used to substantiate the reliability of the informant

(CCR § 3321 (b) (3), again while this may serve Lt. Quinones and

LEIU's purposes this constitutes a specific lack of "notice" to

San Agustin enabling him him to challenge the basis of the

informants reliability.

   San Agustin further challenges this souce item as not being

based on first hand knowledge (informant) and would futher assert

that Lt. Qinones failed to take the realities of the information

under consideration required by **Madrid v. Gomez**, 889 F. **Supp.**

**1146 at 1272-73**, specifically once compared with source item No.

3 (below) (informant) source item No. 2 (informant) is not only

contradictory to source item No. 3 as to San Agustin's alleged "Rank" but has him being "demoted" (by date, and fact..?) as well.    Clearly both inmates cannot be factually correct.  It should be noted that in order for these items (informants) to be of personal-first-hand-knowledge San Agustin would have to personally tell each of these informants that he was running the yard, his rank, and that he was demoted...again Lt. Quniones failed to take the realities of the information under consideration as required by **Madrid v. Gomez**, (Supra) at 1272-73. It is well known that informants are rarely-if-ever motivated by the truth (**Madrid** at 1272-73)

Conspicuously absent from ALL SOURCE ITEMS is any articulable basis to establish any illegal or unlawful act by San Agustin on the behalf of a gang (CCR§ 3323).

**SOURCE ITEM no. 3 CDC Form 1030 Dated 2-13-05 (Exhibit "C")**

Again Lt. Quinones does not list any actual criteria to substantiate the reliability of the source (informant).

San Agustin would also argue the validity of this source item as not being based on personal-first-hand-knowledge and hearsay for the same reasons above (Rank and demotion=both informants cannot be right) there is no corroboration (factual) or articulable basis as to any illegal or unlawful act on behalf of a gang (CCR § 3321).

**SOURCE ITEM No. 4 CDC Form 1030 Dated 9-22-05 (Exhibit "D")**

This Form 1030 read on its face indicates that the source item is unreliable as hearsay evidence of a highly suspect nature[ ]. IGI Lt. Quinones has screened and monitored San Agustin's mail for a period of at least 8 months to this point

21.

within the confines of an ongoing investigation, the investigation reveals no communication from Martinez to San Agustin, or from San Agustin to Martinez. This source item is wholly uncorroborated; not based on personal first hand knowledge; and articulates no basis to show any illegal act on the behalf of any gang (CCR§ 3321).

This "Phantom Letter" does not even exist and should be considered second hand hearsay as there is no demonstratable means to challenge a letter that does not exist. This particular source item should be reviewed with the utmost care, and in light of all facts set forth in this writ - again "informants are rarely-if-ever motivated by the truth" (Madrid Supra, at 1272). This Phantom letter" is evidently the evidence respondent relies on to prove a "direct link" to a prison "Gang Member", the problem with this hearsay evidence is that the letter does not exist and never has - without more it must fail. See Cato v. Rushen, 824 F 2d 703, 704-05 (9th Cir. 1981) and (CCR § 3378 (c)(8)(H) and 3378 (c)(8)(L).

## SUMMARY OF EVIDENCE

In order for petitioner's placement and retention in segregation to be valid, it must be supported by "some evidence." "Toussaint v. McCarthy, 801 F. 2d 1080 (9th Cir. 1986) despite this low threshold, respondent is required to establish some indicia of reliability of the evidence that forms the basis for an administrative action. Cato v. Rushen, 824 F. 2d 703, 704-705 (9th Cir. 1981) (Uncorroborated hearsay by a confidential informant is not reliable evidence). As discussed above for each source item, respondent fails to prove that any evidence , must

22.

less "some evidence" that petitioner is associated with gang activity in that he promotes, further[s], or assist[s] any gang (CCR § 3023 (a).

The evidence not only does not show a **"direct link"** to a **"validated gang member"** the information even fails to demonstrate how petitioner is an associate (e.g., planning, organizing, threatening, financing, soliciting, or commiting unlawful acts of misconduct classified serious pursuant to CCR § 3315. See Definition of "Gang". Innocuous association alone that is not indicative of an unlawful act or act of serious misconduct is insufficient, <u>Scales v. U.S.</u> 367 U.S. 203. San Agustin has not even had even one Rule Violation Report while in prison, not even a 128 Counseling Chrono, nothing.

All of respondents evidence is based on what could only be classified as second-hand-information and hearsay. The California Department of Corrections recently entered into a **"Settlement Agreement"** in <u>Castillo v. Alameida</u>, filed in **U.S. district Court (Case No. C-942847-MJJ) (N.D.)** in which CDC agreed not to use such hearsay evidence **(See Exhibit "I")** this agreement not to use hearsay evidence by informants is now codified in CCR § 3378 (c)(H) which reads:

> (H)." Informants. Documentation of information
> evidencing gang affiliation from an informant <u>shall</u>
> indicate the date of the information, whether the
> information is confidential or nonconfidential, and an
> evaluation of the informants reliability. Confidential
> material <u>shall</u> also meet the requirements established
> in section 3321. Staff <u>shall</u> articulate how the
> information specifically relates to the inmates
> involvement with the gang as a member or associate.
> The information may be used as a source of validation
> if the informant provides <u>specific</u> <u>knowledge</u>
> [Personal-First-Hand-Knowledge] of how he/she knew the
> inmate to be involved with the gang as a member or
> associate. Multiple confidential sources providing

information regarding a single gang related incident or behavior shall constitute one (1) source item. Exclusive reliance on hearsay information provided by informants will not be used for validation purposes. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution" (Emphsis Added).

In short, **Source Item No. 1:** Is a letter not written by San Agustin;   **Sourse Item No. 2:** CDC Form 1030: Informants I & II cannot both be factually correct, the evidence is clearly second hand, and hearsay; **Source Item No. 3:** The **"Phantom Letter"** does not even exist can only be described as second-hand-hearsay evidence, which is not corroborated by other available means known to, and used by Lt. Quinones (The Sceening of San Agustin's Mail over a year period of the investigation) who ironically **predetermined** that a "validation Packet" will be submitted in this case before the evidence was even available or collected..Lt. Quinones's statements to the effect **"But I Will"** (find someone to talk bad about you) are troubling...Lt. Quinones 'found' inmates who would "talk bad about" San Agustin even if he could not find a correctional officer to do so.

San Agustin asserts that Lt. Quinones "Investigation and Fact Finding was biased from the begining and is not only inherently unreliable but constitutionaly impermissible.

## CONCLUSION & PRAYER FOR RELIEF FOLLOW
### THIS PAGE

## CONCLUSION

Due to the lack of proper 'notice' in this case; the clear use of second hand information and hearsay; and the clear bias of Lt. Quinones petitioner would respectfully assert that the validation of petitioner be rescinded.

## PRAYER FOR RELIEF

Wherefore, petitioner would respectfully ask this honorable Court to:

1) Declare the rights of the parties;

2) Grant the Writ of Habeas Corpus invalidating the gang validation of petitioner and order the California Department of Corrections and Rehabilitation to return petitioner to the general population immediately;

3) Conduct an in camera review of the information provided by the informants in this case;

4) Hold an Evidentiary Hearing to assertain the veracity of the informants in light of Lt. Quoinones bias;

4) Grant any other relief deemed appropriate and just by the court.

## VERIFICATION

I, Michael San Agustin, swear under the penalty of purjury that the above is true and correct to the best of my knowledge, executed this _____Day of

Michael San Agustin<br>
Petitioner In Pro Per

State Of California  )
                  ) ss.
                  )
County Of Del Norte  )
                  )

A F F I D A V I T
O F
Michael San Agustin

I, Michael San Agustin, declare and state that I could competently testify to the following if called to do so:

1) That I am a resident of the State of California, County of Del Norte, and reside at Pelican Bay State Prison in Cresent City, California;

2) That I am the petitioner in this writ of habeas corpus before the court in San Agustin v. James Tilton, Director of CDCR;

3) That I have read the facts in this writ of habeas corpus including all the statements made to me by Lt. Quinones on February 7, 2005 and that I supplied the verbatim statements as they were made to me by Lt. Quinones;

4) That I was particularly troubled and confused by how unsure Lt. Quinones was when one minute saying that I wrote the 4-17-04 letter in Spanish, then saying I must be the 'Mailman' then. I was also troubled by his seemingly angery demeanor over answers I gave him to his questions as there was nothing to be angery at, or why he would state that he could not find even one CDC Correctional Officer to talk bad about me..."but I will"...

5) That on September 2, 2005, I met with Lt. Quinones because he appointed himself as my first level of appeal reviewer on my Administrative Appeal filed in this matter challenging my Validation as a Gang Member/Associate, during this meeting he

-1-

would not address the merits of the appeal except to say that he knew I did not write the letter (Source Item # 1, Exhibit "A");

6) That I do not know Artie Guzman C-41587 nor have I ever spoken to him, or corrisponded with him, the first I have ever seen or heard of his name is in the issued CDC Form 1030 (Exhibit "B"), Likewise I do not know or associate with anyone named "Badger" or Albert Martinez P-78620 (Exhibit "D");

7) That I do not talk to other inmates about letters in any form, and that I have not written any of the inmates mentioned in the CDC 1030 Forms;

8) That I do not, and have never had 'authority' over anything, or anyone, in prison involving any inmates what-so-ever;

9) That I have never had a CDC Rules Violation Report since my arrival in CDC on this term, that I have spent my time minding my own business, visiting with my wife and family, and focused on keeping my nose clean while awaiting my appeal and post conviction related matters;

10) That any delay in filing this writ has largely been due to the small amount of information (12 lines of information on 1030's) and having to mail documents, questions, and responses back and forth between my paralegal who resides in another prison, this same paralegal has been helping on my criminal appeal, which this validation process has interupted as well;

11) That I need the help of a paralegal in these matters to help me understand the complexities of filing various legal pleadings, research the issues, etc. I have sought the help of paralegals here at Pelican Bay and no one wants to have anything

-2-

to do with me due to my current active status as a validated gang member/associate;

12) That I have acted with diligence to the best of my ability;

13) That the above is true and correct to the best of my knowledge under the penalty of purjury of the laws of the State of California, executed this _15_ Day of February 2007, at Cresent City, California.

Michael San Agustine

/
/
/
/
/

State Of California    )
                       )  ss.
                       )
County Of Fresno       )
_____

A F F I D A V I T

Of

**Troy A. Temple**

I, Troy A. Temple, declare and state that I could competently testify to the following if called to do so:

1) That I am a resident of the State Of California, County of Fresno, at Pleasant Valley State Prison, in Coalinga, California;

2) That I am a prison paralegal helping Michael San Agustin with his writ of habeas corpus before the court in San Agustin v. James Tilton, Director CDCR;

3) That this is the first time I have helped another inmate with a Prison Gang Validation Case;

4) That it is very difficult due to the small amount of information provided on the CDC 1030 Confidential Disclosure Forms provided in this case;

5) That any delay in the filing of this case is do to my current and ongoing case load in helping others, and the amount of time it takes to relay questions, documents, and responses back and forth between us;

6) That I have acted with every bit of diligence I can in helping San Agustin getting this writ on file and could not have done so before now;

7) That the above is true and correct to the best of my knowledge under penalty of purjury of the laws of the State Of

-1-

California, executed this 15th day of February 2007, at Coalinga, California.

_Troy Alexander Temple_
Troy A. Temple

/

/

/

/

/

# Exhibit - A

NAME and NUMBER    **SAN AGUSTIN, T-45378**                                          CDC 128-B (Rev. 4/74)

On April 15, 2004 The Institutional Gang Investigator (IGI) received a letter addressed to Alex Olivarez 2044 Chariton St. Los Angeles Ca. 90034 from M. San Agustin T-45378 facility C-8-204, P.O. Box 5242 Corcoran, Cal. 93212. Alex Olivarez is known to this investigator as Alejandro Renteria P-86617, aka "Droopy", a validated associate of the prison gang known as the Mexican Mafia. Also 2044 Chariton St. Los Angeles, Cal. 90034 is a known maildrop address of Renteria and the Mexican Mafia. San Agustin explains in the letter in Spanish that he received his pleasant few words and is in complete agreement in everything Olivarez is saying. San Agustin states its messed up in the department of the Jolly Ranches, meaning at California Substance Abuse and Treatment Facility (CSATF). San Agustin further tells Renteria that he left in a hurry, meaning Renteria was transferred to to the Security Housing Unit after his validation was complete. San Agustin also states he will do as Renteria asks, however does not want Renteria to write to him at his house, meaning his housing unit. San Agustin further states he doesn't want to be validated as Renteria was.

San Agustin should be closely monitored for any further gang activity. An investigation is ongoing and a validation packet will be submitted to Law Enforcement Investigative Unit (L.E.I.U.), upon completion. A copy of the letter will accompany this chrono.

Original:    Central File
             Writer

A. QUINONES
**Correctional LIEUTENANT**
**Institutional Gang Investigator**
**CSATF/SP at Corcoran**

DATE  April 15, 2004              GANG INFORMATION              GENERAL CHRONO

RECEIVED
APR 1 5 2004
IGI DEPT.



alex olivares
2014 chariton st.
los angeles, ca. 90034

m... w.. regustin · T. 45378
facility C-6. 2c7
p.c. box 5244
corcoran, cal. 93212

RECEIVED

APR 1 5 2004

IGI DEPT.

Easter Sunday

Greetings.

Alejandro:

Primeramente, que nada, un fuerte abrazo
con todo nuestro amor, para usted y su linda familia
Erale, como te a ido. hermano? Espero que se encu
entren a todo dar que esperamos nada menos.

Pues aqui nomas llevandonolas muy suave. En véz
en cuando se pone deficil. pero uno sigue adelante
con las puras fuerzas para salir en frente.

Agarre su muy plancentera palabritas. y simon
que si, estamos muy de acuerdo en todo que me dice
y estas al tire en todo que cuentas! Solamente que
nomas llege una carta, el cartero se lee lo las demas
return to sender, quien sabe ahi? ademas que me contab
as en edad?

Pues, si, asi es hermano, esta cabron en el depar-
tamento de Dolly Sanches, pero are todo posible para
cumplirles, y con la gomita tambien.

Y que dice el Josenaso, se fue muy derepente
te digo como raizes tiene que andar uno porque de
cai todo el canton, tambien arre lo que pudio. nomas
que no llamen por aca, o sea a nuestra cantona, porque
nos sacan de los oidos, en caliente, ya wachaste el
Josenaso, ay, yo las envio un saludo en véz en
cuando, cuando se presenta la opportunidad.

Pues, esta cartita, nomas para avisales que todo estamos
de acuerdo, y que llegaron sus domicilios. y muchisimas
gracias por todo, ay llevatela suave alejandro. un

Viva nuestra raza od y tambien las chicas! pero ya te
voy a las aguilas del eimerica, oso no andes con
tus rasitas(= con esto me despido, les deseo
tranquilidad y placer, con amor y respeto, tu
hermanito,

chinola(=

RECEIVED

APR 1 5 2004

IGI DEPT.

# Exhibit - B

STATE OF CALIFORNIA
CDC 1030 (12/86)

**DEPARTMENT OF CORRECTIONS**

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: **T-45378**                    INMATE NAME: **SAN AGUSTIN**

1) Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a) CDC-115, Disciplinary Report dated _____ submitted by

_____
STAFF NAME/ TITLE

b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.

The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution. This information is considered reliable because:

a) ☐ This source has previously provided confidential information which has proven to be true.

b) ☐ This source participated in and successfully completed a Polygraph examination.

c) ☐ More than one source independently provided the same information.

d) ☐ This source incriminated himself/herself in a criminal activity at the time of providing the information.

e) ☐ Part of the information provided by the source(s) has already proven to be true.

f) ☒ Other (EXPLAIN) **INVESTIGATION** _____

_____

3) Disclosure of information received.

The information received indicated the following:
**CONFIDENTIAL MEMORANDUM DATED 2-13-04, (INTEL REPORT) INDICATES YOU ARE THE OVER-ALL AUTHORITY FOR THE MESA ON THE UPPER YARD AT CSATF, CONDUCTING MEXICAN MAFIA GANG RELATED BUSINESS FOR ARTIE GUZMAN C-41587, A VALIDATED MEMBER OF THE MEXICAN MAFIA.**

_____

_____

(If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material folder). **CONFIDENTIAL MEMORANDUM DATED 2-13-04, IS LOCATED IN THE CONFIDENTIAL SECTION OF THE CENTRAL FILE.**

_____          2-7-05
STAFF SIGNATURE, TITLE                        DATE DISCLOSED

**DISTRIBUTION: WHITE — Central File; GREEN — Inmate; YELLOW — Institution Use**

87 82069

Exhibit - C

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

# CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER:  T-45378                    INMATE NAME:  SAN AGUSTIN

1) Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a)  CDC-115, Disciplinary Report dated _____ submitted by

    _____
                                       STAFF NAME, TITLE

    b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2) Reliability of Source.
    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.
    This information is considered reliable because:

    a) ☐  This source has previously provided confidential information which has proven to be true.

    b) ☐  This source participated in and successfully completed a Polygraph examination.

    c) ☐  More than one source independently provided the same information.

    d) ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e) ☐  Part of the information provided by the source(s) has already proven to be true.

    f) ☒  Other (EXPLAIN)  INVESTIGATION

    _____

3) Disclosure of information received.

    The information received indicated the following:
    CONFIDENTIAL MEMORANDUM DATED MAY 25-04, (INFORMANT) INDICATES YOU ARE THE SECOND
    HIGHEST-RANKING MEMBER OF THE MEXICAN MAFIA CHAIN OF COMMAND ON FACILITY C AT CSATF.

    _____

    _____

    _____
                        (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
    folder).  CONFIDENTIAL MEMORANDUM DATED MAY 25-04, IS LOCATED IN THE CONFIDENTIAL SECTION OF
    THE CENTRAL FILE.

    _____              2 - 7 - 05
              STAFF SIGNATURE, TITLE                 DATE DISCLOSED

DISTRIBUTION: WHITE — Central File; GREEN — Inmate; YELLOW — Institution Use

Exhibit - D

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)


# CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER:  **T-45378**                    INMATE NAME:  **SAN AGUSTIN**

1)  Use of Confidential Information.

Information received from a confidential source(s) has been considered in the:

a)  CDC-115, Disciplinary Report dated _____  submitted by

_____
STAFF NAME, TITLE

b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____

2)  Reliability of Source.
The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.
This information is considered reliable because:

a)  ☐  This source has previously provided confidential information which has proven to be true.

b)  ☐  This source participated in and successfully completed a Polygraph examination.

c)  ☐  More than one source independently provided the same information.

d)  ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

e)  ☐  Part of the information provided by the source(s) has already proven to be true.

f)  ☒  Other (EXPLAIN)  **INVESTIGATION**

3)  Disclosure of information received.

The information received indicated the following:
**CONFIDENTIAL MEMORANDUM DATED SEPTEMBER 22-04, (INFORMANT) INDICATES A LETTER WAS
GENERATED BY YOU WHICH STATED THAT "BADGER" KNOWN TO THIS INVESTIGATOR AS ALBERT
MARTINEZ P-78620 A VALIDATED ASSOCIATE OF THE MEXICAN MAFIA, WAS AT CSATF-CORCORAN WITH
YOU.**

(If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
folder).  **CONFIDENTIAL MEMORANDUM DATED SEPTEMBER 22-04, IS LOCATED IN THE CONFIDENTIAL
SECTION OF THE CENTRAL FILE.**

_____          **3-7-05**
STAFF SIGNATURE, TITLE                     DATE DISCLOSED

**DISTRIBUTION: WHITE — Central File; GREEN — Inmate; YELLOW — Institution Use**

87 62069

# Exhibit - E

STATE OF CALIFORNIA                                                        DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE**      Location:  Institution/Parole Region       Log No.                    Category
**APPEAL FORM**            1. SATF-2                           1. 05-02760              2
CDC 602 (12/87)
                                  2. _____                    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification
committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff
member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting
documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken
for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| San Agustin, Michael | T-45378 | | ASU-142-18 |

A. Describe Problem: The IGI Investigation and LEIU Gang Validation of San Agustin is inherently

unreliable and should be receded on the ground that use of unreliable evidence violates

San Agustin's Due Process Rights under the 14th Amendment of the United States Constitution;

California Code of Regulations Title 15; and the 2005 "Settlement Agreement" in Castillo v.

Alameida, filed in U.S. District Court (Case No. C-94-2847-MJJ) which both IGI and LEIU are

conscious of (See Exhibit "A.").    Furthermore, there is clear evidence that during the

investigation stage of these proceedings that there was an inappropriate predetermination

made by IGI Investigation Lt. A. Quinones that a "Validation Packet" (with evidence not yet

If you need more space, attach one additional sheet.

RECEIVED

B. Action Requested: See Attached

JUL 2 6 2005

IGI DEPT.

Inmate/Parolee Signature: _____                    Date Submitted: 07/13/05

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

_____

_____

_____

Staff Signature: _____        Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and
submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

CSATF APPEALS
JUL 2 5 2005

Signature: _____                         Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed        CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

CSATF APPEALS
JUL 2 8 2005

# Exhibit - F

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

# Memorandum

Date : September 2, 2005

To : Inmate M. SAN AGUSTIN, T-45378

Subject: **FIRST LEVEL RESPONSE, APPEAL LOG NO. SATF-Z-05-02760**

**Action Requested:** You request that the validation be rescinded. That the entire record in this matter be expunged on the basis of unreliability and bias as set forth within this appeal, and to be released back to the General Population.

Your appeal was referred for First Level Review on July 25, 2005. Correctional Lieutenant A. Quinones conducted an interview with you on September 2, 2005, concerning your appeal.

In your appeal you stated Lt. Quinones and LEIU used unreliable evidence which violates your Due Process Rights. You also state there was inappropriate predetermination by IGI LT. Quinones that a "Validation Packet" (with evidence not yet collected or known) would be submitted.

Investigation reveals that on February 9, 2005, IGI unit attempted to interview San Agustin, in regards to the source documents submitted to LEIU. San Agustin refused to exit his assigned cell to be interviewed stating, "I'm not coming out for IGI or ISU". April 20, 2005, IGI attempted to interview San Agustin concerning the appeal dated March 17, 2005, however, San Agustin refused to exit his cell to discuss the issues, and the appeal was cancelled for lack of cooperation per California Code of Regulations Title 15 Section 3084.4(d). San Agustin subsequently withdrew the appeal as he determined it was premature. On June 13, 2005, San Agustin again refused to exit his assigned cell to be interviewed by IGI. A 128b-2 dated May 24, 2005, was received by the IGI unit from the Law Enforcement Investigative Unit (LEIU) indicating that four (4) items were submitted for review and four (4) were accepted which met the validation requirements pursuant to validation requirements established in Title 15 California Code of Regulations Section 3378, which identified San Agustin as an associate of the prison gang known as the Mexican Mafia. In part, an associate is defined as an inmate or parolee who is involved periodically or regularly with members or associates of the gang. On June 13, 2005, IGI issued San Agustin a copy of the 128b-2. The CDC Operations Manual states in Chapter 6, Article 5, subsection 62010.8: "All decisions affecting transfer, program participation, supervision, security, housing, and safety of persons, shall be made by a classification committee.

APPEAL #SATF-Z-05-02760
SAN AGUSTIN, T-45378
Page 2

Considering the above information, your appeal is **Denied** at the First Level of Review

A. QUINONES
Correctional Lieutenant
Investigative Services Unit
California Substance Abuse Treatment Facility and State Prison at Corcoran

K. DAVEIGA
Correctional Captain
California Substance Abuse Treatment Facility and State Prison at Corcoran

CSATF APPEALS
SEP 0 7 2005

Exhibit - G

State of California                                          Department of Corrections and Rehabilitation

# Memorandum

Date:      October 24, 2005

To:        San Agustin, T-45378
           California Substance Abuse Treatment Facility and
           State Prison at Corcoran

Subject:   SECOND LEVEL APPEAL RESPONSE
           LOG NO.:       SATF-Z-05-02760

### ISSUE:

This appeal is filed relative to your validation as an Associate of the Mexican Mafia
Prison Gang.   You contend that your gang validation is based on unreliable/false
allegations.  With that, you claim that Correctional Lieutenant (LT.) A. Quinones, the
California Substance Abuse Treatment Facility and State Prison (CSATF-SP)
Institutional Gang Investigator (IGI) inappropriately pre-determined that you would
become validated.  Additionally, you contend that your due process rights were violated
relative to the 14th amendment to the United States Constitution. Furthermore, it is your
belief that your above noted Prison Gang Validation, which was initiated by CSATF-SP
IGI and approved for validation by the Law Enforcement Investigations Unit/Special
Services Unit (LEIU/SSU) via your CDC form 128B2 dated 5-24-05, was completed
improperly, for you contend that the sources utilized to validate you were allegedly
hearsay information, and the authors of the confidential sources failed to articulate
corroboration and reliability of the sources. Furthermore, you claim that the above noted
investigation failed to recognize how the sources contradicted each other. Lastly, in your
defense, you claim that the aforementioned investigation did not recognize that you have
been disciplinary free, no Rule Violation Reports and no Court Cases, for an extended
period of time.  With that, you claim that the CSATF-SP IGI was trying to get you for
over a year, while making non-substantiated allegations. Therefore, it is your belief that
the above noted validation was somehow completed via an illegal/unlawful act.

You are requesting the following: 1) that the aforementioned Prison Gang Validation be
rescinded; 2) if no to one, you request that the reliability of each source be spoken to; 3)
that each non-reliable source be expunged from your central file; 4) that the entire record
of the above noted Prison gang Validation investigation be expunged from your
records/central file, due to unreliability of the sources and the bias of the investigation;
and 5) that you be released back to the General Population.

San Agustin, T-45378
LOG NO. 05-02760
PAGE 2

## INTERVIEWED BY:

A. Quinones, Correctional Lieutenant, on 1/26/05.

## REGULATIONS:

The rules governing this issue are taken from California Code of Regulations (CCR), Title 15, and the CDC Operations Manual Section (DOM):

> **CCR 3321.  Confidential Material**
> **CCR 3335.  Administrative Segregation**
> **CCR 3341.5. Segregated Program Housing Units**
> **CCR 3375.  Classification Process**
> **CCR 3376.  Classification Committees**
> **CCR 3378.  Critical Case Information**
> **DOM 61020.7 Prison Gang Identification Methods**

## SUMMARY:

IGI Lieutenant, A. Quinones, investigated your appeal at the First Level of Review. Subsequently, your appeal was denied. The First Level Response indicates that the validation source documents were discussed with you. You have received a copy of a CDC 128-B-2 (Gang Validation Review Chrono) authored by the LEIU/SSU dated 5-24-05. There was a committee of three panel members at SSU who reviewed your validation package. The committee reviewed all items submitted. Items accepted as having met the validation requirements were listed on the CDC 128-B-2. You are dissatisfied with the First Level Response, for you contend that the FLR was bias in completing his investigation.

V. Garcia, Appeals Coordinator, investigated your appeal at the Second Level of Review. A confidential source's reliability may be corroborated through investigation. Your issue regarding the corroboration of the information received, and the reliability of the sources, are addressed within the confidential documents. There is not a requirement to provide the name and rank of the author of a confidential memorandum. A thorough review of your appeal issue reveals that the validation process utilized in your case is in compliance with established regulations.

## DECISION:

The appeal is denied. Established regulations for the validation of prison gang members have been complied with.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

DERRAL G. ADAMS
Warden
California Substance Abuse Treatment Facility and State Prison at Corcoran

CSATF APPEALS

NOV 0 2 2005

# Exhibit - H

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **JUN 2 2 2006**

In re:    San Agustin, T-45378
          Pelican Bay State Prison
          P.O. Box 7000
          Crescent City, CA 95531-7000

          IAB Case No.: 0512023          Local Log No.: SATF 05-02760

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner A.A. Read. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that the California Substance Abuse Treatment Facility and State Prison at Corcoran (SATF) Institution Gang Investigator (IGI) investigation and Law Enforcement Investigation Unit (LEIU) gang validation of the appellant is unreliable and should be rescinded on the grounds that the use of unreliable evidence violates the appellant's due process rights and the Castillo Settlement Agreement. The appellant states there is clear evidence that during the investigation stage of these proceedings, there was an inappropriate predetermination made by the IGI investigator, Correctional Lieutenant (Lt.) A. Quinones that a "validation packet" (with evidence not yet collected or known) would be submitted. It is contended that this predetermination questions the validity, accuracy and reliability of all evidence submitted by Lt. Quinones in this matter. The appellant further challenges the validity, accuracy and reliability of the source items used against him. The appellant requests that the validation be rescinded and if the validation is not rescinded, then each item must be specifically and individually responded to and each non-reliable finding shall be expunged from the appellant's confidential section in his central file. It is also requested that the matter be expunged on the basis of unreliability and that the appellant is released to the general inmate population.

**II    SECOND LEVEL'S DECISION:** The reviewer found that the appellant's concerns have been properly addressed by involved and/or assigned SATF staff. The reviewer states that the First Level of Review (FLR), IGI Lt. Quinones, investigated the appellant's appeal, which was subsequently denied. The FLR indicated that the validation source documents were discussed with the appellant. The reviewer also indicates that the appellant received a copy of the CDC Form 128-B2, Gang Validation/Rejection Review Chrono, authored by the LEIU/Special Services Unit, dated May 24, 2005. A committee of three (3) panel members reviewed the submitted validation package, which consisted of four (4) documents used to validate the appellant as an associate of the Mexican Mafia prison gang (EME) prison gang. All items that were accepted as having met the validation requirements were listed on the CDC Form 128-B2. The reviewer contends that the issue regarding the corroboration of the information received and the reliability of the sources are addressed within the confidential documents. The Second Level of Review (SLR) found that the institution appropriately denied the appellant's request for a reversal of the gang validation and found that the appellant's association with the EME prison gang is properly documented and in compliance with established regulations; therefore, the appeal was denied.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

    **A. FINDINGS:** The documentation and presented arguments are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the SLR. The examiner reviewed California Code of Regulations, Title 15, Section 3023, Gang Activity, and CCR 3378, Documentation of Critical Case Information, and concurs with the assessment of the institution that the appellant's appeal issues have been appropriately and properly addressed. The examiner reviewed the three (3) attached CDC Form 1030, Confidential Information Disclosure Form documents, all dated February 7, 2005, and a CDC Form 128-B, General Chrono, dated April 15, 2004. The examiner concurs with the earlier assessment of the SLR that the appellant is appropriately documented as an

SAN AGUSTIN, T-45378
CASE NO. 0512023
PAGE 2

associate of the EME. The established regulations state that a minimum of three (3) source items must be reviewed and approved by the LEIU pursuant to the Castillo Settlement Agreement to validate an inmate as a gang member or associate. In the appellant's case, the IGI submitted four (4) source items and all items met the criteria for validation. The LEIU submitted a CDC Form 128-B2, dated May 24, 2005, to the SATF IGI documenting this issue. The appellant has not shown any documentation or other verified evidence that would lend credence to his appeal issues and requests. The appellant has been duly informed regarding his appeal issues and responding institutional staff has addressed all pertinent areas of his complaint. Based upon the above factors, the appellant has failed to offer any new or compelling evidence that substantiates his claim; therefore, relief at the Director's Level of Review has not been established.

**B. BASIS FOR THE DECISION:**
California Penal Code Section: 5058
California Code of Regulations, Title 15, Section: 3000, 3001, 3023, 3270, 3271, 3321, 3335, 3341.5, 3375, 3375.2, 3376, 3378
CDC Operations Manual Section: 13030.10, 72010.7.2, 72010.7.5

**C. ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.


N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, PBSP
        Appeals Coordinator, PBSP
        Appeals Coordinator, SATF

# Exhibit - I

1  James M. Finberg (State Bar No. 114850)
   Joy A. Kruse (State Bar No. 142799)
2  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   Embarcadero Center West
3  275 Battery Street, 30th Floor
   San Francisco, CA  94111-3339
4  Telephone: (415) 956-1000
   Facsimile: (415) 956-1008
5
   Charles F.A. Carbone (State Bar No. 206536)
6  CALIFORNIA PRISON FOCUS
   2940 16th Street, Suite 307
7  San Francisco, CA  94103
   Telephone: (415) 252-9211
8  Facsimile: (415) 252-9311

9  Counsel for Plaintiff STEVE M. CASTILLO

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12

13  STEVE M. CASTILLO,                    Case No. C-94-2847-MJJ-JCS

14          Plaintiff.                    **SETTLEMENT AGREEMENT**

15  v.

16  EDWARD S. ALAMEIDA. JR.. et al..

17          Defendants.

18

19          Plaintiff STEVEN M. CASTILLO ("Plaintiff") and Defendants EDWARD S.

20  ALAMEIDA, JR. et al.("Defendants") have agreed to resolve the claims alleged in the above-

21  captioned action on the terms set forth in this Settlement Agreement.

22  I.    **INTRODUCTION**

23          1.    This action was originally filed on August 9, 1994. Plaintiff filed five

24  subsequent amended complaints. Plaintiff challenged the constitutionality of the gang validation

25  procedures; the evidence used in his individual validation; and whether or not his validation was

26  the result of retaliation by prison officials for his jailhouse lawyering and peace proposal

27  activities. Using the overbreadth doctrine that applies in the context of First Amendment

28  challenges to regulations, Plaintiff challenged not only his own validation. but also gang

1    validation policies and procedures as applied to other prisoners. Plaintiff also challenged some of

2    the physical conditions in the Segregated Housing Unit ("SHU") at Pelican Bay State Prison

3    ("PBSP"), as well as the psychological effects of long-term SHU confinement.

4        2.    The Defendants are Edward S. Alameida, Jr., Joseph L. McGrath, Jr., Alan

5    Addison, Judy Olson, E.S. Rodriguez, Larry Williams, C. Sheppard, and J. Briddle, all of whom

6    were sued in his or her official capacity. Defendants deny any and all allegations raised by

7    Plaintiff in this action.

8        3.    On June 19, 2002, the Court granted Defendants' summary judgment

9    motion as to Plaintiff's Eighth Amendment claim regarding physical conditions in the SHU.

10   Summary judgment as to Plaintiff's First Amendment claims, retaliation claim, and Eighth

11   Amendment claim (regarding the psychological effects of SHU confinement) were denied.

12       4.    On January 5, 2004, this Court partially granted Defendants' summary

13   judgment motion finding there was no due process violation, except to the extent Mr. Castillo

14   alleges he was denied notice and an opportunity to be heard during the course of his initial

15   validation. The Court also found that there was "some evidence" to support Mr. Castillo's

16   validation. The Court granted Defendants' summary judgment motion as to Plaintiff's Eighth

17   Amendment claim finding that there were no psychological effects of prolonged SHU

18   confinement. Summary judgment as to Mr. Castillo's retaliation and First Amendment claims

19   was denied.

20   II.    PARTIES

21       5.    The Plaintiff is Steve M. Castillo, a prisoner at Pelican Bay State Prison.

22       6.    The Defendants are Edward S. Alameida, Jr., the former Director of the

23   California Department of Corrections, Joseph L. McGrath, Jr., the Warden at PBSP, Alan

24   Addison, a retired Senior Special Agent in the former Special Services Unit, Judy Olson, a retired

25   Associate Government Program Analyst in the Law Enforcement and Investigations Unit, E.S.

26   Rodriguez, a former CDC Lieutenant at PBSP, Larry Williams, a retired CDC Lieutenant at

27   PBSP, C. Sheppard, a former Acting Warden at PBSP, and J. Briddle, a former CDC Lieutenant

28   at PBSP.

1  **III.    DEFINITIONS**

2         7.       The following terms when used in this Agreement shall have the meanings

3  specified below:

4                  (a)      "Inactive review" shall mean the review of an inmate's prison gang

5  status governed by the process described in Title 15 § 3341.5(c)(5).

6                  (b)      "Articulable basis" shall mean a written record of specific,

7  articulable facts along with the rational inferences drawn from those facts.

8                  (c)      "Current, active determination" shall mean a written record and

9  finding as defined in paragraph 24 of this Settlement Agreement.

10                 (d)      "Defendants" shall mean Edward S. Alameida, Jr., Joseph L.

11 McGrath, Jr., Alan Addison, Judy Olson, E.S. Rodriguez, Larry Williams, C. Sheppard, and

12 J. Briddle.

13                 (e)      "Execution of settlement" or "Effective Date" shall mean the date

14 by which the final party shall have signed the agreement.

15                 (f)      "Gang activity" and "gang content" are defined in this agreement

16 consistent with the definition in Title 15 §§ 3000 & 3023.

17                 (g)      "Parties" shall mean Plaintiff Castillo and the Defendants

18 enumerated *supra* in ¶ 7(d).

19                 (h)      "Released Claims" shall mean any and all claims or causes of

20 action contained in Plaintiff's original Complaint, First Amended Complaint, Second Amended

21 Complaint, Third Amended Complaint, Fourth Amended Complaint, and Fifth Amended

22 Complaint. "Released claims" shall also include Plaintiff's gang validation and conditions of

23 confinement at Pelican Bay State Prison existing from the date of the original Complaint,

24 August 9, 1994, through the date of the execution of this Agreement. "Released claims" does not

25 refer to any claims regarding the review of Mr. Castillo's validation as set forth in paragraph 29

26 of this Agreement or to any future inactive reviews of Mr. Castillo's status on behalf of the

27 Classification Committee.

28                 (i)      "Released Parties" shall mean Edward J. Alameida, Jr.; Joseph L.

1  McGrath, Jr.; Alan Addison; Judy Olson; E.S. Rodriguez; Larry Williams; C. Sheppard, and

2  J. Briddle, all of whom are released in his/her individual and official capacities.

3       (j)    "Validation" shall mean the process codified in Title 15 § 3378

4  whereby an inmate is identified as a prison gang member or gang associate.

5  **IV.   POLICIES AND PROCEDURES**

6       8.    For all policy and procedure changes described in this agreement, the

7  Department of Corrections agrees to propose to codify the changes in either Title 15 of the

8  California Code of Regulations and/or the Department Operations Manual ("DOM"). The parties

9  estimate it will take approximately 90 days from the date of the execution of the settlement

10 agreement for the Law Enforcement Investigations Unit ("LEIU") to finalize the proposed Title

11 15 and/or DOM changes. The proposed changes, whether to Title 15 or to the DOM, will then be

12 forwarded to the Department of Corrections' Regulation and Policy Management Branch, which

13 may take approximately nine months to finalize the changes. The Regulation and Policy

14 Management Branch will assist in determining whether Title 15 and/or the DOM is the

15 appropriate place to codify the policies and procedures recited herein. The Department shall

16 conclude its internal finalization of the proposed changes to both Title 15 and/or the DOM no

17 later than one year from the date of the execution of this Agreement. Plaintiff understands that

18 following internal finalization of the proposed changes to Title 15 by the Department of

19 Corrections, the Department of Corrections must forward the proposed changes to Title 15 to the

20 California Office of Administrative Law and/or any other interested body for final codification.

21 A written copy of any codification of these policies and procedures in either Title 15 or the DOM

22 shall be provided to Plaintiff's counsel within 30 calendar days of their codification.

23      9.    Due Process in Validations and Inactive Reviews. Defendants shall

24 provide notice and opportunity to be heard to each and every prisoner at the pre-validation and

25 inactive review stage. Defendants agree to provide 24-hour advance notice to each prisoner of

26 the source items considered prior to the validation packet being sent to Law Enforcement and

27 Investigations Unit ("LEIU") for approval or rejection of an initial validation. Defendants also

28 agree to record the prisoner's opinion on each of the source items and to forward in written form

1 │ such opinions to LEIU. A copy of the written record of the prisoner's opinion shall be given to

2 │ the prisoner, prior to the time the record is forwarded to LEIU.

3 │        10.    Defendants shall provide notice and opportunity to be heard for inactive

4 │ reviews. Notice shall be given to the prisoner at least 24 hours in advance of a consideration of

5 │ inactive review. Similarly, each prisoner shall be given an opportunity to record his opinions on

6 │ the new source items as part of the inactive review. The recorded views of the inmate shall be

7 │ forwarded to the decision-makers over the inactive reviews prior to the rendering of a decision. A

8 │ copy of the written record of the prisoner's opinions shall be given to the prisoner within fourteen

9 │ calendar days of the inactive review. Defendants agree that when new source items are raised,

10 │ beyond those used in the initial validation, each inmate shall be given notice and opportunity to

11 │ be heard during the inactive review.

12 │        11.    The policies and procedures discussed in paragraphs 12 through 21 *infra*

13 │ correspond to the "independent source items" discussed in Title 15 § 3378(c)(8).

14 │        12.    Photographs. (Title 15 § 3378(c)(8)(D)).  Defendants shall reasonably

15 │ ascertain the date of any photograph used in any validation. Defendants agree that no photograph

16 │ used in any validation shall be older than six years. Defendants agree that at the time the

17 │ photograph is taken, at least one person in the photograph shall have been validated, or be

18 │ validated no more than six months after the date the photograph was taken. Defendants agree that

19 │ staff shall record this information and provide it on a written form given to the inmate.

20 │        13.    Talking in the Law Library. (*see* Title 15 § 3378(c)(8)(E)).  Defendants

21 │ agree that a prisoner's talking in a SHU law library to a validated gang member or associate shall

22 │ not be relied upon as a source item unless IGI or staff has an articulable basis for determining that

23 │ the communication was related to gang activity. Defendants agree that staff shall record this

24 │ information and provide it on a written form given to the inmate.

25 │        14.    Tattoos and symbols. (Title 15 § 3378(c)(8)(B)).  Defendants agree that

26 │ any tattoo or symbol relied upon as a source item must include an articulation by staff as to why

27 │ the tattoo or symbol has a specific association with a particular prison gang. Defendants agree

28 │ that staff shall record this information and provide it on a written form given to the inmate.

1                    15.     Written Material/Communications.  (Title 15 § 3378(c)(8)(C) & (L)).

2   Staff must have an articulable basis for why a written material or communication is reliable

3   evidence of gang association or membership.  Defendants agree that staff must articulate and

4   record why a written material or communication is evidence of gang association/membership

5   based on either the explicit, or coded, content of the communication.  With respect to greeting

6   cards, such as a birthday card or get well card, staff must record an articulable basis for why the

7   communication is evidence of gang membership or association.

8                   16.     Staff Information.  (Title 15 § 3378(c)(8)(E).)  Defendants agree that staff

9   must have an articulable basis for determining that gang content or conduct at issue is gang-

10  related.  Defendants agree that staff shall record this information and provide it on a written form

11  given to the inmate.

12                17.     Offenses.  (Title 15 § 3378(c)(8)(I)).  Defendants agree that if a

13  disciplinary offense is considered a potential source item for validation, IGI or staff shall have an

14  articulable basis for why the offense is gang-related.  Defendants agree that staff shall record this

15  information and provide it on a written form given to the inmate.

16                18.     Legal Documents.  (Title 15 § 3378(c)(8)(J)).  Defendants agree that staff

17  shall have an articulable basis for why legal correspondence is a source item.  Staff shall

18  articulate and record why a legal document is evidence of gang association or membership based

19  on either the explicit or coded content of the document.  This information shall be recorded by

20  staff and provided on a written form given to the inmate.

21                19.     Address Books.  (*see* Title 15 § 3378(c)(8)(L)).  Defendants agree that

22  staff shall have an articulable basis for why the contents of address books are evidence of gang

23  association.  This information shall be recorded by staff and provided on a written form given to

24  the inmate.

25                20.     Visitors.  (Title 15 § 3378(c)(8)(K)).  Defendants agree that staff must

26  have an articulable basis for determining that the visitor and inmate discussed gang content or

27  conduct.  Defendants must have an articulable basis for identifying the visitor as associated with

28  the prison gang, and Defendants agree that the gang identification of a visitor may be rebutted via

1  a prisoner's opportunity to present his views. This information shall be recorded by staff and
2  provided on a written form given to the inmate.

3        21.    Confidential Sources. (Title 15 § 3378(c)(8)(H)). Defendants agree that
4  "laundry lists" – that is, when confidential sources, including debriefers, identify a prisoner as an
5  associate or member by listing names of inmate(s) without reference to gang-related acts
6  performed by the inmate(s) – shall not be relied upon as a source item. Defendants agree that the
7  confidential source must identify specific gang activity or conduct performed by the alleged
8  associate or member before such information can be considered as a source item. This
9  information shall be recorded by staff and provided on a written form given to the inmate.

10       22.    Single Source Rule. Defendants agree that a single, gang-related incident
11 or conduct described or documented by multiple sources, confidential or otherwise, shall
12 constitute one source item only.

13       23.    Hearsay. Defendants also agree that exclusive reliance on hearsay from a
14 confidential source will not be used as a source item for validation.

15       24.    Current. Active Determination. Defendants agree that a prisoner will not
16 receive an indeterminate SHU term as a validated gang member or associate without first being
17 found to be a current, active gang member or associate consistent with the procedural safeguards
18 established in this Agreement. Each ICC and/or UCC review of an indeterminate SHU term will
19 review the inmate's current gang status and indicate that status on the 128G chrono. The inmate
20 will receive a copy of the chrono unless otherwise requested. "Currently active" gang status is
21 defined as any documented gang activity within the past six years consistent with CCR
22 3341.5(c)(5). Defendants agree that these requirements will be reflected in Title 15 and/or the
23 DOM, to the extent they do not already appear there.

24       25.    The provisions set forth in paragraphs 11 to 24 shall be applied on a
25 prospective basis only, and shall apply throughout the Department of Corrections.

26       26.    Training. Defendants agree that the above policy changes shall be
27 reflected in Institutional Gang Investigator ("IGI") training materials and gang educational
28 materials considered and applied by LEIU, and shall be reflected in Title 15 and/or the

1    Department of Operations Manual. Defendants agree that all relevant staff, including but not

2    limited to IGI and LEIU, will receive training and instruction on the terms of the settlement

3    agreement no later than 180 days after execution of the settlement where appropriate and as

4    reflected in Paragraph 8.

5             27.    Administrative Bulletin or Memorandum. Defendants shall issue a

6    memorandum or an administrative bulletin to notify general staff of the terms of the settlement

7    agreement no later than 180 days after execution of the settlement. A copy of the memorandum

8    or administrative bulletin shall be provided to Plaintiff's counsel within 30 calendar days of its

9    issuance.

10             28.    Gang Diversion Video. Defendants will seek permission from the Director

11    of the CDC to show a gang diversion video to the general and SHU populations. A copy of the

12    gang diversion video shall be provided to plaintiff's counsel within thirty calendar days of its first

13    broadcast. if any.

14             29.    Gang Validation of Plaintiff Castillo. Defendants agree that after executing

15    the settlement, Defendants will within 90 days review the validation of the Plaintiff in accordance

16    with the modifications adopted pursuant to the settlement. Defendants also agree that no source

17    items learned of through Plaintiff's deposition testimony in this litigation shall be considered

18    against Mr. Castillo in any subsequent review of his gang validation.

19    **V.    ENFORCEMENT**

20             30.    The Court, specifically the Honorable Martin J. Jenkins, shall retain

21    jurisdiction to enforce the terms of this Agreement. The Court shall have the power to enforce

22    the terms of this Agreement through specific performance and all other remedies permitted by

23    law or equity.

24             31.    While the parties agree that there is no ongoing monitoring of the

25    Settlement Agreement,

26             (a)    If Plaintiff's counsel believes that Defendants are not complying

27    with the specific provisions of this Settlement Agreement to make policy changes, they shall

28    notify Defendants' counsel in writing via the U.S. Postal Service of the facts supporting their

1  belief. Defendants shall investigate the allegations and respond in writing within 45 days. If

2  Plaintiff's counsel are not satisfied with Defendants' response, the parties shall meet and confer to

3  resolve the issue(s). If the parties are unable to resolve the issue(s) satisfactorily, Plaintiff may

4  request relief in the U.S. District Court, Northern District of California, before Judge Martin J.

5  Jenkins. This process will cease to be available once the proposed changes to the policies

6  described in this Settlement Agreement are internally finalized. This occurs when the California

7  Department of Corrections' Regulatory and Policy Management Branch provides the proposed

8  changes to the Office of Administrative Law and/or other interested bodies, where approvals are

9  outside the California Department of Corrections' control.

10  (b). Following final codification of the proposed changes by the Office

11  of Administrative Law and/or any other interested bodies, the California Department of

12  Corrections will implement the codified changes. For six months following the start date of the

13  implementation of the codified policy changes, if Plaintiff's counsel believes that Defendants are

14  not complying with the implementation of the codified policy changes, they shall notify

15  Defendants' counsel in writing via the U.S. Postal Service of the facts supporting their belief.

16  Defendants shall investigate the allegations and respond in writing within 45 days. If Plaintiff's

17  counsel are not satisfied with Defendants' response, the parties shall meet and confer to resolve

18  the issues(s). If the parties are unable to resolve the issue(s) satisfactorily, Plaintiff may request

19  relief in the U.S. District Court, Northern District of California, before Judge Martin J. Jenkins.

20  This process will cease to be available once the six-month time frame elapses from the

21  implementation start date described above.

22  (c) There can be no individual inmate relief regarding an inmate's gang

23  validation granted through the above-described process; individual inmate concerns regarding

24  his/her own gang validation can only be raised as exemplars by Plaintiff's counsel of alleged

25  noncompliance. Individual inmate concerns must be raised through the California Department of

26  Corrections inmate appeals process (Cal. Code Regs. tit. 15, §§ 3084 *et seq.*) and separate suit.

27  **VI.   ATTORNEY'S FEES AND COSTS**

28  32. Defendants shall pay Lieff, Cabraser, Heimann & Bernstein, LLP $240,000

1   within 90 calendar days of the execution of this agreement.  That sum shall be divided among

2   plaintiff's counsel, future litigation efforts, and plaintiff as shall be decided by plaintiff's counsel

3   and plaintiff.  Lieff, Cabraser, Heimann & Bernstein, LLP shall complete a Payee Data Record

4   form and shall return that Payee Data Record form to Defendants' counsel upon execution of this

5   agreement.

6          33.    At the time that Plaintiff and his counsel signs this settlement agreement,

7   Plaintiff's counsel shall also sign and return to counsel for Defendants an executed Stipulation

8   and [Proposed] Order of Dismissal With Prejudice.  Plaintiff's counsel authorizes counsel for

9   Defendants to file the dismissal with prejudice with the court once the settlement check has been

10  delivered to Plaintiff's counsel.

11  **VII.    RESOLUTION OF CLAIMS**

12          34.    Plaintiff fully and forever releases and discharges all served and unserved

13  Defendants, including Defendants Edward S. Alameida, Jr., Joseph L. McGrath, Jr., Alan

14  Addison, Judy Olson, E.S. Rodriguez, Larry Williams, C. Sheppard, and J. Briddle, and all others

15  who have ever been named as Defendants in this action, in both their individual and official

16  capacities, from all claims, demands, actions, and causes of action including claims for attorneys'

17  fees, court costs, and other costs of suit, arising out of an alleged injury or claims incurred by

18  Plaintiff as alleged in this action.  Plaintiff also fully and forever releases and discharges the State

19  of California, the California Department of Corrections and its employees, agents (including, but

20  not limited to the Pelican Bay State Prison in Crescent City, California and its employees and

21  agents), servants, and other representatives, past or present, from all claims, demands, actions,

22  and causes of action, including claims for attorneys' fees, court costs, and other costs of suit,

23  arising out of any alleged injury or claims incurred by Plaintiff as alleged in this action.  Plaintiff

24  specifically, but without limitation, releases the Releasees for all claims that were brought or that

25  could have been brought.  Plaintiff does not release any claims regarding the review of his

26  validation as set forth in paragraph 29 of this Agreement nor any claims regarding any future

27  inactive reviews of his status on behalf of the Classification Committee.

28          35.    Plaintiff acknowledges and agrees that this release and discharge is a

1  general release. Plaintiff expressly waives and assumes the risk of any and all claims identified in

2  Paragraph 7(h) which exist as of this date, but which he does not know or suspect to exist,

3  whether through ignorance, oversight, error, negligence, or otherwise, and which, if known,

4  would materially affect his decision to enter into this settlement agreement. Plaintiffs has read

5  the contents of Section 1542 of the Civil Code of the State of California, and he expressly waives

6  the benefits of this section. Section 1542 reads as follows:

7          Section 1542.  (General Release - Claims Extinguished)

        A general release does not extend to claims which the creditor does

8          not know or suspect to exist in his favor at the time of executing the

        release, which if known by him must have materially affected his

9          settlement with the debtor.

10  Plaintiff assumes the risk that the facts or law may be other than he believes.

11          36.    Upon the execution of the settlement agreement, Defendants shall be

12  deemed to and shall have released Plaintiff Castillo from any and all claims relating to the

13  original Complaint and the Second Amended Complaint, Third Amended Complaint, Fourth

14  Amended Complaint, and Fifth Amended Complaint.

15  VIII.  PARTIES' AUTHORITY

16          37.    The signatories hereby represent that they are fully authorized to enter into

17  this agreement and bind the parties hereto to the terms and conditions hereof.

18          38.    All of the Parties acknowledge that they have been represented by

19  competent, experienced counsel throughout all negotiations which preceded execution of this

20  agreement, and this agreement is made with the consent and advice of counsel.

21  IX.  MUTUAL FULL COOPERATION

22          39.    The Parties agree to use their best efforts and to fully cooperate with each

23  other to accomplish the terms of this agreement, including but not limited to, execution of such

24  documents and to take such other action as may reasonably be necessary to implement and

25  effectuate the terms of this agreement.

26  X.  MODIFICATION

27          40.    This agreement may not be changed, altered, or modified, except in writing

28  and signed by the parties hereto, and approved by the Court.

## XI.    ENTIRE AGREEMENT

41.    This agreement constitutes the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this agreement. In the event of any conflict between this agreement and any other settlement-related document, the parties intend that this agreement shall be controlling.

## XII.   CHOICE OF LAW/JURISDICTION

42.    This agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of California, both in its procedural and substantive aspects, and shall be subject to the continuing jurisdiction of the United States District Court for the Northern District of California. According to Magistrate Judge Edward M. Chen at the May 28, 2004 Settlement Conference, "[u]nder the terms of the settlement agreement, the District Court will retain jurisdiction to supervise the enforcement, should that be necessary." This agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this agreement or any specific term or condition thereof.

## XIII.  COUNTERPARTS

43.    This agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one agreement, which shall be binding upon and effective as to all Parties.

1   Dated: September __, 2004          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

2

3                                      By: _____
                                            Joy A. Kruse
4

5                                      James M. Finberg (State Bar No. 114850)
                                       Joy A. Kruse (State Bar No. 142799)
                                       Lieff, Cabraser, Heimann & Bernstein, LLP
6                                      Embarcadero Center West
                                       275 Battery Street, 30th Floor
7                                      San Francisco, CA 94111-3339
                                       Telephone: (415) 956-1000
8                                      Facsimile: (415) 956-1008

9                                      Counsel for Plaintiff STEVE M. CASTILLO

10  Dated: September __, 2004          CALIFORNIA PRISON FOCUS

11

12                                     By:_____
                                          Charles F.A. Carbone
13

                                       Charles F.A. Carbone (State Bar No. 206536)
14                                     2940 16th Street, Suite 307
                                       San Francisco, CA 94103
15                                     Telephone: (415) 252-9211
                                       Facsimile: (415) 252-9311
16
                                       Counsel for Plaintiff STEVE M. CASTILLO
17
    Dated: September __, 2004          LAW OFFICES OF GRAHAM NOYES
18

19
                                       By: _____
20                                          Graham Noyes

21                                     James Graham Noyes (State Bar No. 157395)
                                       228 Commercial Street, #219
22                                     Nevada City, CA 95959
                                       Telephone: (530) 478-9196
23                                     Facsimile: (530) 478-9197

24                                     Counsel for Plaintiff STEVE M. CASTILLO

25

26

27

28

1    Dated: September __, 2004              BILL LOCKYER, Attorney General of the State of
                                            California
2                                           OFFICE OF THE ATTORNEY GENERAL

3

4                                           By: _____
                                                    Jonathan L. Wolff
5
                                            Jonathan L. Wolff
6                                           Supervising Deputy Attorney General
                                            455 Golden Gate Avenue, Suite 11000
7                                           San Francisco, CA 94102-7004
                                            Telephone: (415) 703-1113
8                                           Facsimile: (415) 703-5843

9                                           Attorneys for Defendants Alameida, McGrath, Addison,
                                            Olson, Rodriguez, Williams, Sheppard, and Briddle
10

11
     Dated: September __, 2004              STEVE M. CASTILLO
12

13

14                                          By : _____
                                                     Steve M. Castillo
15
                                            Steve M. Castillo
16                                          P.O. Box 7500
                                            Pelican Bay State Prison
17                                          Crescent City, CA 95531

18

19

20

21

22

23

24

25

26

27

28

July 1, 2008

Court Clerk
United States District Court
of California
450 Golden Gate Ave.
San Francisco, Ca. 94102

E-filing



**(PR)**

**P.JH**

Michael San Agustin, CDCR # T-45378
Pelican Bay State Prison
P.O. Box 7000
5905 Lake Earl Drive
Crescent city, Ca 95532

**COVER LETTER — FILING FEE ($5.00)**

Dear Court Clerk,

Please find enclosed and original and one copy of my Writ of Habeas
Corpus 2254 dealing with a state prison issue.   Please also find enclosed
a $5.00 check or M.O. for the filing fee.

Please advise me at the earliest date possible if there is any any
problem with this filing.   Thank You.

Sincerely & Respectfully,

Michael San Agustin
Petitioner

```
Court Name: U.S. District Court, NDCA
Division: 3
Receipt Number: 34611021244
Cashier ID: sprinka
Transaction Date: 07/14/2008
Payer Name: vonda wheeler-kaesbauer
-----------------------------------
WRIT OF HABEAS CORPUS
 For: michael san augstin
 Amount:      $5.00
-----------------------------------
CHECK
 Check/Money Order Num: 2727
 Amt Tendered:  $5.00
-----------------------------------
Total Due:     $5.00
Total Tendered: $5.00
Change Amt:    $0.00

pjh

Checks and drafts are accepted
subject to collections and full
credit will only be given when the
check or draft has been accepted by
the financial institution on which
it  was drawn.
```

Vonda Kaesbauer
13744 Marquita Lane
Whittier, Ca.
            90604






UNITED STATES
POSTAL SERVICE



0000        94102


U.S. POSTAGE
PAID
LA MIRADA.CA
90638
JUL 10,'08
AMOUNT

**$5.60**
00052000-07









Court Clerk
United States District Court
Northern District
450 Golden Gate Ave.
San Francisco, Ca.
                94102